```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

LEXINGTON INSURANCE CO.                      CIVIL ACTION

VERSUS                                       NO: 10-460

SEWERAGE & WATER BOARD OF                    SECTION: "A" (4)
NEW ORLEANS
```

**ORDER AND REASONS**

Before the Court is a **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 14)** filed by plaintiff/counterclaim defendant Lexington Insurance Co.  Defendant/counterclaim plaintiff Sewerage & Water Board of New Orleans opposes the motion.  The motion, set for hearing on August 18, 2010, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is DENIED.

**I. BACKGROUND**

Lexington Insurance Co. filed this declaratory judgment action seeking a judicial determination that certain insurance policies issued by Lexington to the Sewerage and Water Board of New Orleans do not provide coverage for claims tendered by the Board in December 2007.  According to Lexington, the Board sought indemnification for third-party property damage for which the Board was liable pursuant to a Consent Decree entered on April 22, 1998.  That Consent Decree had its genesis in litigation

1

originally brought by the United States of America, through the Environmental Protection Agency, in September of 1993, for the discharge of pollutants and other violations of federal law.  In June of 1986 various other local citizens groups had intervened in the lawsuit as plaintiffs.  Lexington's declaratory judgment complaint asserts a litany of coverage defenses.

The Board filed a counterclaim against Lexington on June 17, 2010, seeking coverage for the third-party property damage for which it was liable pursuant to the Consent Decree.  The Board also seeks statutory penalties for Lexington's failure to adjust the claim in good faith.

The policies pursuant to which the Board sought coverage were issued for the period running from January 11, 1977, to no later than January 11, 1987.[1]  As the foregoing dates suggest, the Board did not tender its claim to Lexington until more than fourteen years after the United States had first brought legal action against the Board, and nine years after entry of the Consent Decree.

Via the instant motion, Lexington moves to dismiss the Board's counter claim arguing 1) that the Board's counterclaim is prescribed on the face of the complaint, and 2) that the acts for which the Board seeks indemnity did not occur during the effective

---

[1] Lexington contends that the policy covering the period January 11, 1986 through January 11, 1987 was not issued to the Board.

dates of insurance coverage issued by Lexington.  Lexington adds that its motion is dispositive of the entire case because the relief the Board seeks via its counterclaim constitutes the converse of the relief sought by Lexington in its complaint for declaratory relief.

## II.  **DISCUSSION**

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005) (citing Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000)).  In deciding a motion to dismiss under Rule 12(b)(6), the district court accepts as true those well-pleaded factual allegations in the complaint.  Id. (citing C.C. Port, Ltd. v. Davis-Penn Mortgage Co., 61 F.3d 288, 289 (5th Cir. 1995)).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true "raise a right to relief above the speculative level."  Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)).  Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Id.

(quoting Twombly, 127 S. Ct. at 1966).

Lexington's first argument in support of its motion to dismiss is that the Board's claims are prescribed. Lexington argues that contract claims are subject to ten year liberative prescription and that such prescription accrues from the time the claimant knew or should have known of the basis for the claim. Lexington contends that the Board knew of its claims as early as 1993 when the United States filed suit against the Board.

The Board responds by arguing that its claim is for breach of the various insurance contracts and that its cause of action did not accrue until Lexington denied coverage, which occurred sometime after December 2007 when the Board first tendered its claim to Lexington. The Board also points out that its failure to act sooner was reasonable given the consistent change in city administrations and the fact that the Board has been self-insured since 1987--in other words, the Board's failure to discover the existence of the Lexington policies until years later was not unreasonable under the circumstances.

The Court cannot find any support in Louisiana law for Lexington's contention that the Board's breach of contract claim began to accrue either when the Board was first sued in 1993 or at any other time prior to the date that Lexington denied coverage. One of the general tenets of Louisiana law is that prescription does not begin to run until the plaintiff is aware of the facts

4

that give rise to the cause of action.  See Hawthorne v. La. Dep't of Pub. Works, 540 So. 2d 1261, 1263 (La. App. 3d Cir. 1989). Implicit in this statement is the proposition that in order for the plaintiff to be aware of the facts giving rise to the cause of action they must first exist.  An essential element of the Board's claim for breach of the insurance contracts is Lexington's alleged refusal to honor its obligations under the policies, i.e., the breach.  This conduct did not occur when the Board first became aware of its potential liability for third-party property damage or at any point in time prior to Lexington's refusal to provide coverage under the policies.  It was only when Lexington denied coverage that the facts giving rise to the Board claims for breach of the insurance contracts even came into existence.

     The two cases that Lexington cites in support of its prescription argument do not support its position.  Bergeron v. Pan American Assurance Co., did not address prescription in the context of the insured's breach of contract claims.  731 So. 2d 1037 (La. App. 4th Cir. 1999).  The court's discussion of the prescription issue dealt only with the plaintiffs' tort claims. And while the court did dismiss the breach of contract claims, it did so based on an exception of no cause of action grounded on the express language of the policy because the policy itself clearly foreclosed the plaintiffs' claims.  Id. at 1044-45.  Likewise, while the court in Maurice v. Prudential Insurance Co., granted

5

the insurer's exception of prescription, it did so based on an express policy requirement that any claim be brought within twelve months after the loss.  831 So. 2d 381, 385 (La. App. 4th Cir. 2002).  Neither <u>Bergeron</u> nor <u>Maurice</u> holds or even suggests that an insured's claim for breach of the insurance contract begins to accrue when the insured merely becomes aware of the facts giving rise to coverage.  In fact, Louisiana cases hold to the contrary. <u>See, e.g.</u>, <u>We Sell Used Cars, Inv. v. United Nat'l Ins. Co.</u>, 715 So. 2d 656 (La. App. 2d Cir. 1998); <u>DeGeorge v. Allstate Ins.</u>, Co., 631 So. 2d 1257 (La. App. 5th Cir. 1994).  Collectively, all these cases demonstrate that *in the absence of an express policy provision to the contrary*, the clock does not start to run on an insured's coverage claim simply because the facts that might support coverage under the policy are known to the insured.

Moreover, the foregoing cases not only fail to support Lexington's prescription defense but they highlight one of the most rudimentary aspects of Louisiana law pertaining to insurance policies and it is this aspect of Louisiana law that Lexington completely ignores.  The results pertaining to the breach of contract issue in both <u>Bergeron</u> and <u>Maurice</u> turned on the express terms of the policy.  Under Louisiana law an insurance policy is a contract that constitutes the law between the insurer and the insured and as such the policy governs the nature of their relationship.  <u>Norfolk So. Corp. v. Ca. Union Ins.</u>, 859 So. 2d

167, 189 (La. App. 1st Cir. 2003) (citing La. Civ. Code art. 1983). The extent of coverage is determined by the terms of the insurance policy itself. Id. (citing Peterson v. Schimek, 729 So. 2d 1024, 1028 (La. 1999)).

Lexington fails to direct the Court's attention to any provision in its policies that renders an insured's claim untimely when the insured does not tender the claim within a finite period of time. Lexington does not suggest that its policy is a claims-made policy such that coverage only attaches if the damage is discovered and reported within the policy period. See Verhalen v. Forum Health Mgt., 771 So. 2d 238, 242 (La. App. 2d Cir. 2000). Louisiana law allows insurers to impose reasonable conditions upon the obligations that they assume in their insurance contracts, id. at 243, but having failed to include a requirement that the insured tender the claim within a specific time period or forfeit coverage, Lexington's argument must fail.[2]

In sum, in the absence of an express policy provision that

---

[2] The Court assumes that Lexington's policies contain no claims-made or unambiguous timeliness provision because Lexington does not direct the Court's attention to any such language and it chooses instead to rely upon general prescription principles for its timeliness argument. Lexington's policies are attached to its complaint and comprise hundreds of pages so the Court will not pore over those policies searching for exclusionary language beneficial to Lexington's case. The Court notes that the policies do impose upon the insured the duty to forward notice of any lawsuit to Lexington "as soon as practicable." (Rec. Doc. 1-3). Of course, any argument that coverage should be denied based on the Board's failure to abide by this duty would not be cognizable on a Rule 12(b)(6) motion to dismiss.

would render the Board's coverage claim untimely, Lexington must resort to reliance upon generally-applicable principles of prescription. But under Louisiana law, prescription did not begin to accrue on the Board's breach of contract claim until Lexington denied coverage. Therefore, the motion to dismiss is DENIED insofar as it is based on prescription.

The motion is likewise DENIED as to Lexington's second argument in support of dismissal--that the acts for which the Board seeks indemnity did not occur during the effective dates of insurance coverage. The Court suspects that for much of the coverage at issue that may well be true because the record does suggest that Board's indemnity claim pertains in large part to occurrences that post-date the last of the Lexington policies. But the Board points to occurrences encompassed within the record that did occur during the policy years. The issue is simply not appropriate for dismissal at the pleading stage.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 14)** filed by plaintiff/counterclaim defendant Lexington Insurance Co. is **DENIED.**

October 26, 2010

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE